IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00865-PAB-MEH

ESTATE OF MARCIANO BRIONES, et al.,

    Plaintiffs,

v.

ADAMS COUNTY, a government entity,
SHERIFF MICHAEL MCINTOSH, in his official capacity,
DARIUS ARDREY, in his individual and official capacity,
JIMMY MARSHALL, in his individual and official capacity,

    Defendants.

_____

# ORDER
_____

This matter is before the Court on the Adams County Defendants' Motion for Summary Judgment [Docket No. 171]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

On September 9, 2016, Marciano Briones was incarcerated at Adams County Detention Facility in Adams County, Colorado after being found guilty of driving under the influence. Docket No. 171 at 2, ¶¶ 1-2. On December 25, 2016, Mr. Briones felt ill and was seen by a nurse in the medical unit. *Id.* at 3, ¶ 8. On December 27, 2016, Mr. Patton, a fellow inmate at the Adams County Detention Facility, approached Deputy

---

[1] The following facts are undisputed unless otherwise indicated.

Darius Ardrey[2] on three occasions.  Docket No. 171 at 4, ¶ 17.  On at least one of these occasions, Mr. Patton informed Deputy Ardrey that Mr. Briones was feeling sick.  *Id.*  Deputy Ardrey did not check on Mr. Briones and told Mr. Patton to inform Mr. Briones that he should go to medical if he was feeling sick.  *Id.* at 4-5, ¶¶ 19-20.  At the 10:00 p.m. lockdown, Deputy Ardrey left the unit.  *Id.* at 5, ¶ 22.  Deputy Ardrey did not return to the unit until after 1:00 a.m. and did not inform anyone about Mr. Briones's health.  *Id.*; Docket No. 179 at 4, ¶ 16.

Deputy Jimmy Marshall was on duty in Mr. Briones's unit on December 27, 2016.  Docket No. 171 at 5, ¶ 27.  Before that night, Deputy Marshall had never seen Mr. Briones.[3]  *Id.*, ¶ 23.  No one approached Deputy Marshall regarding Mr. Briones.[4]  *Id.*, ¶ 25.  During the night, Deputy Marshall made six row checks, where officers on duty walk by inmates' cells, including walking past Mr. Briones's cell.  Docket No. 179 at 9-10, ¶ 16.  While in the control booth, Deputy Marshall noticed Mr. Briones get out of

---

[2] The Adams County Detention Facility is operated by the Adams County Sheriff's Department.  *See* Docket No. 128 at 3-4, ¶¶ 9-10.

[3] Plaintiffs dispute that Deputy Marshall was "aware of Briones' obvious and emergent medical needs while he was conducting rounds earlier that night," Docket No. 179 at 5, ¶ 23, but do not dispute that Deputy Marshall had never seen Mr. Briones until the night of December 27, 2016.

[4] While plaintiffs dispute that Deputy Marshall was unaware of Mr. Briones's condition, plaintiffs do not dispute that no one approached or informed Deputy Marshall about Mr. Briones's health and point to no evidence in the record demonstrating that anyone informed Deputy Marshall about Mr. Briones's condition.  *See* Docket No. 179 at 10-11, ¶¶ 12-19.

bed and unsteadily walk toward the bathroom.[5] Docket No. 171 at 5, ¶ 27. Deputy Marshall proceeded to check on Mr. Briones. *Id.* at 6, ¶ 28. Deputy Marshall found Mr. Briones in a bathroom stall. *Id.*, ¶ 29. Deputy Marshall asked inmates if they were aware of any problems with Mr. Briones, to which they replied that they believed that he had the flu.[6] *Id.*, ¶ 30. After walking back to the bathroom to check on Mr. Briones, Deputy Marshall noticed Mr. Briones shaking and called medical.[7] *Id.*, ¶ 33. About five minutes passed from the time that Deputy Marshall saw Mr. Briones get out of bed to when he called medical. *Id.*, ¶ 34; Docket No. 179 at 6, ¶ 34. Deputy Marshall, along with other inmates, monitored Mr. Briones while waiting for medical to arrive, including laying him down and providing blankets. *Id.* at 6-7, ¶¶ 35-36. Deputy Marshall again called medical, this time informing them that they would need to bring a gurney. *Id.* at 7, ¶ 36. Mr. Briones was pronounced dead at 1:48 a.m. on December 28, 2016. *Id.*, ¶

---

[5] Plaintiffs state that they "lack sufficient information to admit or deny" this fact. Docket No. 179 at 5, ¶¶ 27-28. However, plaintiffs must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). Moreover, the Court's practice standards require the non-movant to "admit or deny the asserted material facts" and "[a]ny denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial." Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv. Plaintiffs have failed to do so, and the Court considers this fact admitted. *See* Fed. R. Civ. Proc. 56(e)(2) (permitting a court to consider a fact that a party "fails to properly address" as "undisputed for the purposes of the motion"); *see also Doe v. DiStefano*, No. 16-cv-01789-WJM-KLM, 2019 WL 2372685, at *2 (D. Colo. June 5, 2019) (deeming facts undisputed under similar circumstances).

[6] Plaintiffs fail to admit or deny this fact. *See* Docket No. 179 at 5, ¶¶ 29-33. As a result, the Court deems this fact admitted.

[7] Plaintiffs fail to admit or deny this fact. *See* Docket No. 179 at 5, ¶¶ 29-33. As a result, the Court deems this fact admitted.

3

38. An autopsy concluded that the cause of death was sepsis as a result of a gall bladder infection. *Id.*, ¶ 39.

Plaintiffs, who are the estate of Mr. Briones and the estate's representatives, filed this lawsuit on April 12, 2018. *See* Docket No. 1. In their fourth amended complaint, plaintiffs bring claims against all defendants pursuant to 42 U.S.C. § 1983 for deliberate indifference to Mr. Briones's medical needs. Docket No. 128 at 48.

Defendants filed this motion for summary judgment on January 10, 2020, arguing that (1) there is no evidence that Deputy Ardrey disregarded any medical needs, (2) there is no evidence that Deputy Marshall disregarded any medical needs, and (3) there is no evidence of a custom or policy of Adams County that caused Mr. Briones's death.[8] *See* Docket No. 171 at 9-18.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary

---

[8] Defendants also argued that there was no evidence that Sheriff Michael McIntosh was in anyway involved with the events leading to Mr. Briones's death. *Id.* at 16. However, since the filing of the motion for summary judgment, plaintiffs have dismissed the claim against Sheriff McIntosh in his individual capacity. *See* Docket No. 186.

judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

Plaintiffs' claims against all defendants are for violation of Mr. Briones's right under the Eighth Amendment to be free from deliberate indifference to his known medical needs. Docket No. 128 at 48. Plaintiffs bring these claims pursuant to § 1983.

*Id.*

While jail officials and "the municipal entities that employ them, cannot 'absolutely guarantee the safety of their prisoners[,]' . . . they [still] 'have a constitutional duty to take reasonable steps to protect the prisoners' safety and bodily integrity.'" *Cox v. Glanz*, 800 F.3d 1231, 1247-48 (10th Cir. 2015) (quoting *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999); *Berry v. City of Muskogee*, 900 F.2d 1489, 1499 (10th Cir. 1990)). A claim for deliberate indifference to serious medical needs has an objective and a subjective component. The objective component requires that the medical need be "sufficiently serious." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The subjective component requires that "a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (citation and quotations omitted).

### A. Deputy Darius Ardrey

The Court finds that plaintiffs' claim against Deputy Ardrey is not appropriate for dismissal at this stage. Defendants concede that facts related to Deputy Ardrey's liability are disputed. *See* Docket No. 195 at 2 ("Plaintiffs' almost exclusive reliance on [Mr.] Patton's deposition testimony has established a dispute as to a material fact in this case.")

Based on Mr. Patton's deposition testimony that, on the night Mr. Briones died, he informed Deputy Ardrey that Mr. Briones was "very sick," Docket No. 179 at 7, ¶ 6c, and that he looked like a "skeleton," *id.* at 2, ¶ 9, a reasonable jury could conclude that Deputy Ardrey was both aware of an excessive risk to Mr. Briones's health because Mr.

Patton informed him as much and ignored it by not checking on Mr. Briones. *See Sealock*, 218 F.3d at 1209 (requiring that a medical issue be "sufficiently serious" and that the "prison official knows of and disregards an excessive risk to inmate health or safety"). Defendants do not consider Mr. Patton "a credible witness" and dispute his account. *See* Docket No. 195 at 2. The Court finds that there is a genuine dispute regarding material facts and therefore defendants' motion for summary judgment as to Deputy Ardrey is denied.

### B. Deputy Jimmy Marshall

The Court finds that Deputy Marshall is entitled to summary judgment on plaintiffs' claim for deliberate indifference. Assuming that Mr. Briones's illness meets the objective prong, there is no evidence in the record suggesting that Deputy Marshall knew of and disregarded an excessive risk to Mr. Briones's health or safety.

Plaintiffs argue that Deputy Marshall was aware that Mr. Briones needed help because Deputy Marshall conducted several row checks during the night.[9] Docket No.

---

[9] Defendants contend that plaintiffs' claim against Deputy Marshall in their complaint is based on his actions once he saw Mr. Briones, not Deputy Marshall's actions during row checks. Docket No. 195 at 5 n.2. The allegations regarding Deputy Marshall in plaintiffs' fourth amended complaint support this contention. *See* Docket No. 128 at 50, ¶ 208. "As a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover." *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir. 1991). However, "the liberalized pleading rules [do not] permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intended to build their case." *Id.* at 1091. Even were the Court to consider plaintiffs' new theory as an attempt to amend their complaint, the Court would deny it. Plaintiffs "w[ere] aware of all the predicate facts . . . at the time [they] filed" their fourth amended complaint, and so there is "no reasonable explanation" why this theory could not have been added at the time the complaint was amended. *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1173 (D. Colo. 2015) (construing new argument as a motion to

7

179 at 17.  However, a claim for deliberate indifference to medical needs requires that a defendant "both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Plaintiffs do not explain how a row check would alert Deputy Marshall to a serious health risk to Mr. Briones.  For example, they do not point to any evidence that Mr. Briones was in visible or audible distress such that Deputy Marshall would notice while "walking directly past Briones' cubicle," Docket No. 179 at 16, that Mr. Briones needed assistance.  Although the testimony of Mr. Patton states that Mr. Briones looked like a skeleton, *id.* at 2, ¶ 9, the undisputed evidence shows that Deputy Marshall had never seen Mr. Briones before and had no idea what he looked like.  Docket No. 171 at 5, ¶ 27.  Thus, even if Deputy Marshall saw Mr. Briones during the row check – and there is no evidence that he did – this would be insufficient to demonstrate that Deputy Marshall was aware of the facts of a substantial risk to Mr. Briones's health or safety and in fact drew the inference.

*Leonhard v. Correct Care Solutions, LLC*, No. 19-cv-00600-PAB-STV, 2020 WL 1694377 (D. Colo. Apr. 7, 2020), is instructive.  There, the plaintiffs alleged that the deputies on duty did the "minimum required" during their walkthrough and, as a result, they failed search an inmate's cell and find a trash bag that the inmate used to commit suicide.  *Id.* at *5.  The Court concluded that plaintiffs had failed to connect the substandard walkthrough with a disregard of a substantial risk of suicide.  *Id.*  Plaintiffs'

---

amend and denying the motion due to moving party failing to explain why the argument was not previously pled).  Nevertheless, the Court addresses plaintiffs' argument and rejects it for the reasons explained below.

argument here suffers from the same problem: plaintiffs offer no argument or evidence that walking past the cell would provide Deputy Marshall with the facts to draw an inference of a harm such that he could actually draw the inference.

As a result, there is no evidence that Deputy Marshall was "aware of the facts" to draw an inference of substantial risk of serious harm such that Deputy Marshall could in fact make the inference. *See Farmer*, 511 U.S. at 837. The evidence shows that, once Deputy Marshall became aware that Mr. Briones need assistance, he questioned inmates about Mr. Briones's health. Docket No. 171 at 5-6, ¶¶ 27-29. When Deputy Marshall saw Mr. Briones shaking, he called medical and continued to monitor Mr. Briones until medical assistance arrived. *Id.* at 6-7, ¶¶ 33-36. Plaintiffs concede that no constitutional violation occurred once Deputy Marshall saw Mr. Briones leave his cell. *See* Docket No. 179 at 6, ¶ 37 ("[W]hile [Deputy] Marshall had previously [] responded with deliberate indifference to [Mr.] Briones['s] serious and obvious medical needs, his eventual calling of the code 100 was appropriate."). Plaintiffs fail to meet the subjective prong and, as a result, Deputy Marshall is entitled to summary judgment.

### C. Adams County and Sheriff McIntosh

Plaintiffs assert that Adams County[10] is liable under § 1983 for having a policy or custom of (1) deliberate indifference to medical needs and (2) inadequate discipline

---

[10] Plaintiffs bring a claim against Sheriff McIntosh in his official capacity, which is equivalent to asserting a claim against Adams County. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." (quotations and citation omitted)).

and investigation. Docket No. 179 at 20-25. Defendants argue that there is no evidence in the record demonstrating the existence of any such policy or custom. Docket No. 171 at 18.

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (footnote omitted). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

To state a claim for municipal liability under § 1983, a party must allege sufficient facts to demonstrate that it is plausible (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). A municipal policy or custom can take the form of

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted).

Plaintiffs make several arguments for municipal liability based on informal custom or policy. "A municipality is liable only when the official policy [or custom] is the moving force behind the injury alleged." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). "A plaintiff must therefore 'identify a government's policy or custom that caused the injury.'" *Cacioppo v. Town of Vail*, 528 F. App'x 929, 931 (10th Cir. 2013) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013)). "The plaintiff must then show 'that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury.'" *Id.* (quoting *Schneider*, 717 F.3d at 769).

"The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307. "[C]ontinued adherence to an approach that [the decision makers] know or should know has failed to prevent tortious conduct by employees may establish . . . conscious disregard." *Bd. Of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997); *see also Rowe v. City of Marlow*, 116 F.3d 1489, 1997 WL 353001, at *6 (10th Cir. 1997) (unpublished table decision) ("Municipal liability for failure to train or supervise requires a finding that the municipality's deliberate indifference 'led an employee to violate a plaintiff's rights' or 'failed to prevent tortious conduct by employees.'" (quoting *Brown*, 520 U.S. at 407)).

Plaintiffs do not identify any specific policy, custom, or practice of Adams County

11

that led to Mr. Briones's death.  For example, they do not suggest or argue that Adams County has a policy or custom of requiring inmates to wait until morning to receive medical assistance.  Rather, plaintiffs argue that various actions of Deputy Ardrey, Deputy Marshall, and Adams County demonstrate that Adams County has a practice, policy, or custom of general deliberate indifference to medical needs, and that this policy resulted in Mr. Briones's death.  Specifically, plaintiffs argue that (1) Deputy Ardrey and Marshall's actions on their own demonstrate "an established practice, policy, and custom of deliberate indifference to serious medical needs," Docket No. 179 at 21, (2) Adams County has a policy or custom of failing to "adequately investigate and discipline its employees," *id.* at 22, as exemplified by its record retention policy, *id.* at 23, and (3) previous opioid withdrawal deaths at the Adams County Detention Facility demonstrate that there is a policy or custom of providing inadequate medical care.  *Id.,* at 23-24.  The Court addresses each in turn.

*1. Deputies Ardrey and Marshall's Actions*

Plaintiffs contend that, because Deputies Ardrey and Marshall "responded with deliberate indifference," this is "more than sufficient for a jury to reasonably infer that there is an established practice, policy, and custom of deliberate indifference to serious medical needs."  *Id.* at 21.  The Court finds this argument unpersuasive.[11]

---

[11] To the extent that plaintiffs argue that Deputy Ardrey and Deputy Marshall's actions automatically impute liability to Adams County, such a claim has been rejected by the Tenth Circuit.  *See Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005) (unpublished) ("[A] private actor . . . 'cannot be held liable *solely* because it employs a tortfeasor – or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory." (quoting *Monell*, 436 U.S. at 691)).

Plaintiffs seem to argue that, because two separate individuals violated Mr. Briones's constitutional rights, the constitutional violations themselves establish that Adams County has a policy or custom of deliberate indifference to medical needs and, as a result, the identification of a specific policy is unnecessary. The Court finds that a reasonable jury could not conclude that Adams County has a policy of indifference based only on the deputies' actions. First, the Court already concluded that Deputy Marshall did not commit any constitutional violation. Rather, Deputy Marshall responded to Mr. Briones's health needs as soon as he was aware of that Mr. Briones needed assistance. Thus, Deputy Marshall's actions are irrelevant to determining whether Adams County has a policy of deliberate indifference to medical needs.

Second, Deputy Ardrey's action alone are not sufficient to demonstrate that Adams County has any sort of policy or practice of indifference. Generally, a single incident is insufficient to establish a policy or practice for a municipal liability claim. A municipal policy must be "evidenced by a practice so persistent and widespread as to practically have the force of law," and one constitutional violation will not provide the requisite foundation. *Williams v. City of Tulsa*, 627 F. App'x 700, 704 (10th Cir. 2015) (unpublished) (alterations omitted) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)); *see also Stewart v. City of Memphis*, 788 F. App'x 341, 347-48 (6th Cir. 2019) (unpublished) ("Arguing that 'one instance of potential misconduct' is evidence of a clear and persistent pattern is a 'path to municipal liability [that] has been forbidden by the Supreme Court.'" (citation omitted)); *Colardo-Keen v. Rockdale Cty.*, 775 F. App'x 555, 573 (11th Cir. 2019) (unpublished) ("[P]roof of a single incident of unconstitutional

13

activity is not sufficient to impose liability against a municipality because a single incident is not so pervasive as to be custom." (citations, quotations, and alterations omitted)); *Williams v. Heavener*, 217 F.3d 529, 532 (7th Cir. 2000) ("Ordinarily, one incident is not sufficient to establish a custom that can give rise to *Monell* liability." (citation omitted)). However, one incident "may be enough to impose liability if there was an official custom or policy behind the one incident." *Luper v. Bd. of Trustees*, 2016 WL 5394748, at *6 (D. Kan. Sept. 27, 2016).

Assuming that Deputy Ardrey did in fact violate Mr. Briones's constitutional rights, plaintiffs have provided no evidence that he was acting pursuant to any sort of policy. Rather, the only evidence that plaintiffs have submitted is that Deputy Ardrey was not following Adams County policy. Adams County's investigation of Mr. Briones's death found that Deputy Ardrey violated its policies by failing to "check on the welfare of inmate Marciano Briones," even though it is "standard practice to attend to [an] inmate's welfare and send them to medical unit as needed." Docket No. 179 at 6-7, ¶ 2. As a result, this is not a situation where "there was an official custom or policy behind the one incident," *Luper*, 2016 WL 5394748, at *6, such that Deputy Ardrey's actions alone can establish the existence of a unconstitutional policy. Therefore, plaintiffs must provide evidence of "a practice so persistent and widespread as to practically have the force of law." *Williams*, 627 F. App'x at 704. Plaintiffs have not provided that evidence.[12]

---

[12] Plaintiffs additionally argue that defendants "have taken the position that everything Ardrey and Marshall did . . . was consistent with the customs, practices, and policies of Adams County, and the training the County provided them," Docket No. 179

14

Plaintiffs have thus failed to raise a genuine issue of material fact that would preclude summary judgment based on only the actions of Deputy Ardrey and Deputy Marshall.

*2. Failure to Investigate and Discipline*

Plaintiffs argue that Adams County has a custom or policy of failing to investigate and discipline its employees. Docket No. 179 at 22-23. As to Deputy Marshall, they contend that he has been investigated and disciplined for various infractions while employed by Adams County, but continues to not only be employed by the county but also receive raises. *Id.* at 22. As a result of this lackluster investigation and disciplinary history, plaintiffs contend that the county has "trained [Deputy] Marshall that he can violate offenders' rights with impunity" and that this training "caused [Deputy] Marshall to respond to [Mr.] Briones in the deliberately indifferent manner that he did." *Id.* Regarding Deputy Ardrey, plaintiffs argue that, although Deputy Ardrey was found to have violated Adams County policy, the county did not "counsel [Deputy] Ardrey to behave differently in the future." *Id.* at 23. The Court addresses each in turn.

First, the Court already concluded that Deputy Marshall was not deliberately

---

at 22, and, as a result, "this binding admission alone also provides a sufficient basis upon which a reasonable jury could hold the County liable." *Id.* While there is evidence that Deputy Ardrey and Deputy Marshall asserted that their actions were consistent with Adams County policy, Docket No. 179 at 12, ¶ 29, plaintiffs point to nothing in the record where Adams County concedes that its deputies' actions were consistent with any policy. Regardless, Deputy Marshall did not commit a constitutional violation and Deputy Ardrey's actions alone are insufficient to establish the existence of an unconstitutional policy that caused Mr. Briones's death. As a result, this argument in unavailing.

indifferent. Rather, he acted properly once he became aware of Mr. Briones's health condition. Therefore, his actions cannot form the basis of a municipal liability claim against Adams County because there is no constitutional violation that any alleged policy could have caused.

Second, plaintiffs fail to establish that Adams County's lack of counseling of Deputy Ardrey was the moving force behind Deputy Ardrey's actions on the night of Mr. Briones's death. It is not clear how a lack of counseling after Mr. Briones's death could somehow cause Deputy Ardrey to act in the manner he did. Indeed, they cannot establish that the lack of counseling after the fact was the moving force of Mr. Briones's death because the county policy or action in question must occur before the alleged constitutional violation.[13] *See Waller*, 932 F.3d at 1290 (holding that conduct after an alleged violation cannot be the cause of the violation).

As a result, plaintiffs have failed to raise a genuine issue of material fact regarding any policy of inadequate investigation to support their municipal liability claim.

*3. Previous Deaths at Adams County Detention Facility*

Finally, plaintiffs argue that previous deaths at the Adams County Detention

---

[13] Plaintiffs also argue that Adams County's policy of discarding disciplinary records that are five years or older causes their employees to violate inmates' constitutional rights. Docket No. 179 at 12, 23, ¶ 28. However, plaintiffs' reliance on *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009), is misplaced. While *Cordova* held that a cover-up could provide evidence that a policy is a "policy in name only," the Tenth Circuit concluded that there was no cover-up because there was a "full investigation." *Id.* Here, as in *Cordova*, there was an investigation, and plaintiffs offer no support for the theory that a five-year record retention policy, on its own, could supply the direct causal connection necessary to make out a municipal liability claim.

Facility demonstrate that Adams County has a policy of indifference to medical needs and was on notice that its policy was constitutionally infirm. Docket No. 179 at 23-25. However, these deaths are insufficient to create a genuine issue of material fact that would preclude summary judgment because there is no evidence that the allegedly unconstitutional policy in those cases was the moving force behind Mr. Briones's death.

Each case that plaintiffs cite revolves around deficient medical care for inmates suffering from opioid withdrawal. *See* Docket No. 179 at 23-25. Plaintiffs do not explain how deficient care for inmates in opioid withdrawal relates to the sole potential constitutional violation here – Deputy Ardrey's alleged decision to ignore an inmate after being told that Mr. Briones was seriously ill. Plaintiffs must demonstrate a "direct causal link" between Adams County's alleged policy of deficient medical care for inmates in opioid withdrawal and Mr. Briones's death. *See Barney*, 143 F.3d at 1307 (citing *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 397 (1997)). Plaintiffs do not make such a connection, and it is difficult to see how substandard withdrawal care is related to the situation here.

Because neither the previous deaths at the Adams County Detention Facility nor the actions of Deputy Ardrey or Deputy Marshall on their own demonstrate a genuine issue of material fact as to plaintiffs' claim for municipal liability claim, Adams County is entitled to summary judgment.

## IV. CONCLUSION

It is therefore

**ORDERED** that the Adams County Defendants' Motion for Summary Judgment

[Docket No. 171] is **GRANTED** in part and **DENIED** in part. It is further

ORDERED that plaintiffs' claim against Deputy Jimmy Marshall is **DISMISSED** with prejudice. It is further

ORDERED that plaintiffs' claims against Sheriff Michael McIntosh and Adams County are **DISMISSED** with prejudice.

DATED October 29, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge